E-FILED; Baltimore County Circuit Court
Docket: 2/21/2025 7:01 PM; Submission: 2/21/2025 7:01 PM
Envelope: 20073706

## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

| | |
|---|---|
| CAREFIRST, INC.<br>1501 S. Clinton Street,<br>Baltimore, MD 21224,<br>and all affiliated entities and subsidiaries | :<br><br>:<br><br>: |
| CAREFIRST OF MARYLAND, INC.<br>d/b/a CareFirst BlueCross BlueShield<br>1501 S. Clinton Street,<br>Baltimore, MD 21224 | :<br><br>:<br><br>: |
| CAREFIRST MANAGEMENT<br>COMPANY, LLC<br>1501 S. Clinton Street,<br>Baltimore, MD 21224 | :<br><br>:<br><br>: |
| GROUP HOSPITALIZATION AND<br>MEDICAL SERVICES, INC.<br>d/b/a CareFirst BlueCross BlueShield<br>840 First St. NE,<br>Washington, DC 20065 | :<br><br>:<br><br>:<br><br>: |
| CAREFIRST BLUECHOICE, INC.<br>d/b/a CareFirst BlueChoice<br>840 First St. NE,<br>Washington, DC 20065<br>and all affiliated entities and subsidiaries | :<br><br>:<br><br>:<br><br>: |
| CFA, LLC f/k/a Willse & Associates, LLC<br>1501 S. Clinton Street,<br>Baltimore, MD 21224,<br>and all affiliated entities and subsidiaries | :<br><br>:<br><br>: |
| CAREFIRST ADVANTAGE DSNP, INC.<br>1501 S. Clinton Street,<br>Baltimore, MD 21224 | :<br><br>: |
| CAREFIRST ADVANTAGE PPO, INC.<br>1501 S. Clinton Street,<br>Baltimore, MD 21224 | :<br><br>: |

CAREFIRST ADVANTAGE, INC.
1501 S. Clinton Street,                          :
Baltimore, MD 21224

                                                 :
CAREFIRST COMMUNITY PARTNERS INC.
1501 S. Clinton Street,                          :
Baltimore, MD 21224

        *Plaintiffs*                             :

        vs.                                      :        Case No. C-03-CV-25-000701
                                                                   _____

CHANGE HEALTHCARE                                :
TECHNOLOGIES, LLC
1 Optum Circle,                                  :
Eden Prairie, MN 55344
**Serve on:** Registered Agent                   :
The Corporation Trust Incorporated
2405 York Road                                   :
Suite 201
Lutherville Timonium, MD 21093                   :

CHANGE HEALTHCARE, INC.                          :
424 Church St, Suite 1400,
Nashville, TN 37219                              :
**Serve on:** Registered Agent
The Corporation Trust Incorporated
2405 York Road, Suite 201                        :
Lutherville Timonium, MD 21093                   :

CHANGE HEALTHCARE SOLUTIONS, LLC :
424 Church St, Suite 1400,
Nashville, TN 37219                              :
**Serve on:** Registered Agent
The Corporation Trust Incorporated               :
2405 York Road, Suite 201
Lutherville Timonium, MD 21093                   :

CHANGE HEALTHCARE RESOURCES LLC :
424 Church St, Suite 1400,
Nashville, TN 37219                              :
**Serve on:** Registered Agent

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

2

The Corporation Trust Incorporated     :
2405 York Road, Suite 201
Lutherville Timonium, MD 21093     :

CHANGE HEALTHCARE TECHNOLOGY     :
ENABLED SERVICES, LLC
1 Optum Circle,     :
Eden Prairie, MN 55344
**Serve on:** Registered Agent     :
The Corporation Trust Incorporated
2405 York Road     :
Suite 201
Lutherville Timonium, MD 21093     :

CHANGE HEALTHCARE PRACTICE     :
MANAGEMENT SOLUTIONS, INC.
1 Optum Circle,     :
Eden Prairie, MN 55344
**Serve on:** Registered Agent     :
The Corporation Trust Incorporated
2405 York Road     :
Suite 201
Lutherville Timonium, MD 21093     :

ALTEGRA HEALTH OPERATING     :
COMPANY, LLC
14261 Commerce Way     :
Miami Lakes, FL 33016
**Serve on:** Registered Agent     :
The Corporation Trust Incorporated
351 West Camden Street     :
Baltimore, MD 21201
    :
ENVOY LLC d/b/a Envoy Corporation
26 Century Blvd     :
Nashville, TN 37214
**Serve on:** Registered Agent     :
The Corporation Trust Incorporated
300 E. Lombard St.     :
Baltimore, MD 21202
    :
*Defendants*

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

3

## COMPLAINT

COME NOW the Plaintiffs, CareFirst, Inc., and all affiliated entities and subsidiaries, CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield, CareFirst Management Company, LLC, Group Hospitalization and Medical Services Inc., d/b/a Carefirst BlueCross BlueShield, CareFirst BlueChoice, Inc., d/b/a CareFirst BlueChoice, and all affiliated entities and subsidiaries, CFA, LLC, f/k/a Willse & Associates, LLC, and all affiliated entities and subsidiaries, CareFirst Advantage DSNP, Inc., CareFirst Advantage PPO, Inc., CareFirst Advantage, Inc., and CareFirst Community Partners Inc. (collectively "CareFirst"), and hereby sue the Defendants Change Healthcare Technologies, LLC, Change Healthcare, Inc., Change Healthcare Solutions, LLC, Change Healthcare Resources, LLC, Change Healthcare Technology Enabled Services, LLC, Change Healthcare Practice Management Solutions, Inc., Envoy LLC, and Altegra Health Operating Company, LLC, (collectively, "CHC").

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs CareFirst, Inc., CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield, CareFirst Management Company, LLC, CFA, LLC, f/k/a Willse & Associates, LLC, CareFirst Advantage DSNP, Inc., CareFirst Advantage PPO, Inc., CareFirst Advantage, Inc., and CareFirst Community Partners Inc. are Maryland corporate entities with their resident agent located at 2405 York Road, Suite 201,

Lutherville Timonium, MD 21093, and their principal place of business located at 1501 S. Clinton Street, Baltimore, MD 21224.

2.      Plaintiff CareFirst BlueChoice, Inc., is a registered foreign corporation, with the District of Columbia. Its registered agent in Maryland is located at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093, and its principal offices are located at 840 First St. NE, Washington, DC 20065.

3.      Plaintiff Group Hospitalization and Medical Services, Inc., is a registered foreign corporation, with the District of Columbia. Its registered agent in Maryland is located at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093, and its principal offices are located at 840 First St. NE, Washington, DC 20065.

4.      Defendant Change Healthcare Technologies, LLC is a registered foreign limited liability company, with Delaware as its state of incorporation. Its registered agent in Maryland is located at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093, and its principal offices are located at 1 Optum Circle, Eden Prairie, MN 55344.

5.      Defendant Change Healthcare, Inc., is a registered foreign corporation, with Delaware as its state of incorporation.  Its registered agent in Maryland is located at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093, and its principal offices are located at 424 Church St, Suite 1400, Nashville, TN 37219.

6.      Defendants Change Healthcare Solutions, LLC and Change Healthcare Resources, LLC are registered foreign limited liability companies, with Delaware as their state of incorporation. Their registered agent in Maryland is located at 2405 York

Road, Suite 201, Lutherville Timonium, MD 21093, and both if their principal offices are located at 424 Church St, Suite 1400, Nashville, TN 37219.

7.      Upon information and belief, Envoy LLC operated in Maryland as Envoy Corporation, with a principal address located at 26 Century Blvd Nashville, TN 37214, and their registered agent located at The Corporation Trust Incorporated, 300 E. Lombard St., Baltimore, MD 21202. Upon information and belief, Envoy LLC merged and became Change Healthcare Solutions, LLC.

8.      Upon information and belief, Altegra Health Operating Company, at all relevant times hereto had a principal address of 14261 Commerce Way Miami Lakes, FL 33016 with its registered agent located at The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, MD 21201. Upon information and belief, Altegra Health Operating Company, LLC has now been acquired and changed its name to Change Healthcare Resources, LLC.

9.      Defendant Change Healthcare Technoiogy Enabled Services, LLC is a registered foreign limited liability company, with Georgia as its state of incorporation. Its registered agent is located at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093, and its principal offices are located at 1 Optum Circle, Eden Prairie, MD 55344.

10.     Change Healthcare Practice Management Solutions, Inc., is a registered foreign corporation, with Delaware as its state of incorporation. Its registered agent is located at 2405 York Road, Suite 201, Lutherville Timonium, MD 21093, and its principal offices are located at 1 Optum Circle, Eden Prairie, MD 55344.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

11.    This Court has jurisdiction over this lawsuit as Defendants regularly conduct business throughout Maryland and specifically in this jurisdiction, including but not limited to, by and through the contractual relationship between the Defendants, their affiliates, successors in interest, subsidiaries and partners and the Plaintiffs. The Defendants benefit from, and availed themselves of, the laws of the State of Maryland offering services to Maryland companies.

12.    Venue is appropriate in this Honorable Court pursuant to Md. Code, Cts. & Jud. Proc. §§ 6-201 to 6-203, as the Defendants are all registered in or conduct business within Baltimore County.

### FACTS COMMON TO ALL COUNTS

13.    CareFirst is a Maryland-based health insurance company, providing medical, dental and vision insurance and related services to over 3.25 million people in the greater Washington DC, Virginia and Maryland area. CareFirst holds a significant portion of the market-share in Maryland and provides access to over 1.8 million U.S. providers.

14.    CareFirst provides its services through a variety of products, including a statewide Preferred Provider Organization network, local Health Maintenance Organization networks, Medicare Advantage plans, Medicaid Plains and individual health plans, including plans offered on the federal healthcare exchange created by the Affordable Care Act.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

15.     CHC is one of the largest medical payments and claims processing companies in the United States. Upon information and belief, CHC is a subsidiary of UnitedHealth Group, which is the largest healthcare insurer in the United States.

16.     Throughout the last decade, CHC had several contracts with CareFirst for critical clearinghouse, risk adjustment, claims processing, and other related services spanning multiple agreements and entities. As a result of these agreements, CareFirst shared with CHC protected and confidential information, including electronic Personal Health Information ("PHI") of its insureds.

17.     In connection with the provision of these services, CHC agreed to conduct business with necessary tools, standards and practices to ensure the safeguarding of this PHI that it received.  Representations were made to CareFirst that these measures were in place.

18.     CHC agreed in all of its contracts with CareFirst that it would take no less than a reasonable degree of care to prevent use, access or disclosure of confidential information and/or protected information.

19.     CareFirst and its affiliated entities and subsidiaries entered into written agreements with CHC, including but not limited to the following:

a. Master Relationship Agreement, effective April 23, 2020 between CareFirst of Maryland, Inc. and Change Healthcare Technologies, LLC.

b. Emdeon Business Services Payer Agreement, effective June 30, 2008 between Envoy LLC (now Change Healthcare Solutions, LLC) and Willse & Associates, Inc.

c. CareFirst BlueCross BlueShield EDI Services Agreement effective November 1, 2011, between Envoy LLC (now Change Healthcare Solutions, LLC), and CareFirst Blue Cross Blue Shield.

d. CareFirst BlueCross BlueShield EDI Services Agreement effective December 1, 2012.

e. Consulting Services Agreement, effective October 7, 2016, between Altegra Health Operating Company, LLC (now Change Healthcare Resources, LLC), and CareFirst Blue Cross Blue Shield.

f. Master Services Agreement, effective September 1, 2017, between Altegra Health Operating Company, LLC (now Change Healthcare Resources, LLC), and University of Maryland Medical System Health Plans, Inc., (now CareFirst Management Company, LLC).

20.     CareFirst its affiliated entities and subsidiaries  also executed Business Associate Agreement/Addenda and various other contracts, agreements and related documents with CHC.

21.     On or about February 12, 2024, cybercriminals affiliated with the BlackCat/ALPHV ransomware group entered CHC's network. Upon information and belief, these cybercriminals spent nine days inside CHC's network stealing data before

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

employing ransomware which encrypted CHC's files denying the company access to their records.

      22.    The cybercriminals accessed CHC's network using low-level employee's credentials, which gave then access to a portal that, contrary to CHC's policy and industry standards, did not employ Multi-Factor Authentication ("MFA"). The cybercriminals attacked and infiltrated CHC for over a week stealing data from CHC's systems and employed ransomware.

      23.    MFA is a basic security procedure which creates an additional step to verify the identity of the individual logging into a system after inputting the correct credentials. The goal of MFA is to add an extra step to verify that the user who inputted the credentials in the system is actually the authorized account holder.

      24.    The harm caused by the attacks would have been avoided had CHC implemented appropriate security measures, including but not limited to securing their systems through MFA. As a result, CHC did not have systems, policies, and practices in place appropriate to secure and protect the volume of the highly sensitive data being handled under its contracts with CareFirst.

      25.    Over a week after the data-breach had commenced, on February 21, 2024, CareFirst was notified that CHC was taking itself offline as a defensive measure to deal with the cybersecurity issues.

26.    This suspension of services by CHC on February 21, 2024 meant that CHC was not able to provide processing and payment services with adequate protection of patient data as required by its contracts with CareFirst.

27.    Further, as a result of the notification from CHC on February 21, 2024, CareFirst severed its network connections with CHC to prevent any further risks of infiltration into its systems. All services from CHC to CareFirst ceased and were not resumed.

28.    As a result of the cyberattack, CHC was suddenly unable to provide any of the contractually mandated services to CareFirst, leaving CareFirst and its affiliated entities and subsidiaries unable to process payments and submit claims.

29.    As a result of CHC's failure to safeguard CareFirst's data and PHI, Care CareFirst and its affiliated entities and subsidiaries were left scrambling to find alternatives to process payments and submit claims.

30.    In order to mitigate its damages from the service stoppage, and continue to be able to process insurance claims, CareFirst had to redirect its employees to respond to the ongoing emergency. Additionally, CareFirst had to allocate funds intended for investment purposes to provide in excess of $25 million dollars in interest-free loans to its providers due to the interruption in payments, among other actions.

31.    According to reports, as a result of the data breach, the cybercriminals were able to steal electronic PHI, along with the personal, health, and financial information of over 100 million individuals. The stolen data reportedly included

personally identifiable information and sensitive data such as names, contact information, Social Security numbers, driver's license information, health information, insurance information, and financial documents (collectively "Confidential Information").

32.    The cybercriminals also deprived CHC from accessing both its primary and backup electronic systems, which were rendered unusable for a significant period after the attack.

33.    As a result, CareFirst did not have access to the data it maintained with CHC, and that CHC maintained for CareFirst. CFA (CareFirst Administrators which administers many employer group accounts) and Government Programs (Medicare Advantage and Maryland Medicaid) lost nearly all of its data regarding those lines of business. The services provided by CHC included both claims processing and payments to healthcare providers and EOBs.

34.    CareFirst was required to incur costs to onboard and engage other vendors and lost the benefit of the contracted for services, which caused CareFirst to incur costs, estimate savings and payments through the Health Qx program, deploy and redirect funds and otherwise caused damages to CareFirst.

35.    CareFirst was forced to seek legal action to protect its interests and has and will continue to accrue legal costs, fees, and other costs as a direct result of the Defendants' negligence, gross negligence, misrepresentations, fraud, breaches and actions/inactions.

## CHC Contracts with CareFirst With Each Contract Requiring Confidential Information to be Protected

I.    Master Services Agreement

36.    CareFirst and CHC were parties to a Master Services Agreement ("MSA"), which became effective on September 1, 2017. This Contract was originally between Altegra Health Operating Company, LLC (now Change Healthcare Resources, LLC), and University of Maryland Medical System Health Plans, Inc. It was amended on July 30, 2023.

37.    The scope of the MSA covers services rendered from CHC to the University of Maryland Health System Plans. CareFirst acquired such institution's plans, continued performing on the contract, and renegotiated the scope of services given.

38.    Section 5 of the MSA covers the protection of Confidential Information between the parties to the agreement. In the written agreement, the Parties covenanted that all information considered Confidential based on section 5.1 would not be used or shared unless for use for the purposes of the MSA, or upon the approval of the disclosing party.

39.    Section 5.6 covers the disclosure of PHI, and electronic PHI. CHC agreed to execute a Business Associate Agreement for the protection of the PHI and electronic PHI.

40.    In the Business Associate Agreement, CHC agreed to meet its obligations under the Standards for Privacy of Individually Indemnifiable Information, and Health

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

13

Insurance Reform Security Standards published by the United States Department of Health and Human Services at 45 C.F.R. parts 160 and 164 under HIPAA.

II.     Master Relationship Agreement

41.    The Master Relationship Agreement ("MRA") was a contract between CHC and CareFirst which was first made effective in 2020.

42.    The MRA provides that CHC will provide products and services to CareFirst in accordance with the terms of the agreement, its exhibits, Solution Schedules, and Solutions Orders.

43.    Section 8 of the MRA provides that "each party will protect and safeguard the other party's Confidential Information with at least the same care used for its own Confidential Information of a similar nature, but no less than reasonable care."

44.    Additionally, Section 9 of the MRA states that PHI, and its disclosure is to be governed by a Business Associate Addendum between the parties, which provides further protections and guarantees.

III.    Consulting Services Agreement

45.    On October 7, 2016, Altegra Health Operating Company, LLC entered into a Consulting Services Agreement ("CSA") with CareFirst.

46.    The parties agreed that the scope of work of the CSA would be based upon the execution of Statements of Work ("SOW"), which would serve as separate amendments to the CSA.

47.     Pursuant to the CSA, Altegra and CareFirst executed an SOW for Altegra, and later Change Healthcare Resources, LLC, to provide medical record review and abstraction services for quality measurement activities required by clients and regulations.

48.     As part of its agreement under the CSA, Altegra agreed that it would receive data from CareFirst for the performance of work under the SOWs. Altegra further agreed that it would "maintain reasonable safeguards against the destruction, loss or misappropriation of CareFirst Data in its possession or in the possession of CareFirst."

IV.     Emdeon Business Services Payer Agreement

49.     CHC and CareFirst entered in to the Emdeon Business Services Payer Agreement (EBSPA), effective June 30, 2008. The contract was originally executed by Envoy, LLC and Willse & Associates, Inc. The latest addendum to the agreement provided for substitution of successors-in interests as parties to the EBSPA. Under this addendum, Envoy, LLC was replaced with Change Healthcare Solutions, LLC, and Willse & Associates, Inc., has been replaced with CFA, LLC.

50.     The EBSPA covers the use of Emdeon's services for claims payment and communications services, as well as, the implementation and use of Emdeon's electronic claims payment services. This included, among others, communications about negotiable checks, remittance advices, explanation of benefits, provider statements, system letters or other informational requests, premium billing statements, HIPAA

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

15

Certifications and COBRA notifications. All of this information is Confidential Information and subject to protection by the contracting for entities.

51.    In 2017, the parties to the agreement, now Change Healthcare Solutions and CFA, LLC, agreed to a second Addendum to the EBSPA which added settlement advocate services to the agreement. This provision helped facilitate the processing of payments from CareFirst to third-party healthcare providers.

52.    The EBSPA's confidentiality provisions state that "[e]ach party shall hold the Confidential Information of the other in confidence and protect the same with at least the same degree of care with which it protects its own most sensitive confidential information, but in any event no less than reasonable care."

53.    Additionally, the parties agreed that they would comply with all laws resulting from the performance of the agreement.

V.    CareFirst Blue Cross Blue Shield EDI Services Agreement

54.    CareFirst of Maryland and Envoy LLC signed an EDI Services Agreement ("ESA") which became effective on November 1, 2011.

55.    The ESA covered the processing of electronic claims transactions.

56.    Section 17 of the ESA defines and mandates the standards for the safekeeping of confidential information. The ESA mandates that the parties must protect confidential information by maintaining "the Confidential Information of the Disclosing Party in confidence and will exercise the same level of care as exercised by the Receiving Party with respect to the Receiving Party's own Confidential Information of a

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

similar nature, but not less than a reasonable standard of care to protect the Disclosing Party's Confidential Information."

57.     Additionally on March 1, 2021, Change Healthcare Solutions, LLC and CareFirst agreed to modify the terms of the ESA by adding Section 37, titled "CareFirst Data." Section 37 specifically mandates that:

a.  "Vendor will restrict access to the CareFirst Data solely to those of its employees or Subcontractors who have a demonstrative need to access the CareFirst Data for the Permitted Use, including (but not limited to) through the issuance and use of credentials."

b.  "Vendor shall provide for the physical and electronic security of the CareFirst Data and shall ensure that the CareFirst Data is kept confidential and safe from loss, corruption, theft and unauthorized access, copying, modification, use and disclosure."

c.  "Both parties will use industry-standard antivirus/antimalware protection software and other customary procedures to avoid introducing or permitting the introduction of any virus into the other party's information systems"

58.     Further, Amendment No. 3 added measures of certification to ensure the safety of their systems:

**Certifications**. Vendor annually upon CareFirst's written request will provide evidence of the current HITRUST CSF or equivalent (e.g., ISO 27001, Service Organization Control (SOC) 2 Type II report) relating to the Subscription.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

17

59.    HITRUST CSF is a security and privacy framework which helps companies manage and certify compliance with information security controls, and ensure that they meet legal compliance requirements. HITRUST CSF is commonly utilized in the healthcare industry to ensure compliance with HIPAA security standards.

VI.    CareFirst Blue Cross Blue Shield EDI Services Agreement of 2012

60.    CareFirst of Maryland and RelayHealth, a McKensson Technologies, Inc., company signed an EDI Services Agreement ("ESA 2012") which became effective on December 1, 2012.

61.    RelayHealth changed names to Change Healthcare Technologies, LLC.

62.    On February 2021, ESA 2012 was modified through Amendment No. 1.

63.    Amendment No. 1 to ESA 2012 added Section 24 which provided that CHC must provide compliance training:

> **Compliance Training**. Vendor shall provide training on policies, procedures, and protocols regarding Protected Health Information and Personally Identifiable Information. This training shall occur on an annual basis for all employees and subcontractors who have access to Protected Health Information in the performance of their responsibilities under this Agreement.

64.    It also added Section 25, which mandates that CHC must comply with the CareFirst Compliance Certification.

65.    Further, it added Section 27 titled CareFirst Data requiring that CHC as the Vendor:

a.    "…will restrict access to the CareFirst Data solely to those of its
employees or Subcontractors who have a demonstrative need to access the

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

CareFirst Data for the Permitted Use, including (but not limited to) through the issuance and use of credentials."

b. "Vendor shall provide for the physical and electronic security of the CareFirst Data and shall ensure that the CareFirst Data is kept confidential and safe from loss, corruption, theft and unauthorized access, copying, modification, use and disclosure."

c. "Both parties will use industry-standard antivirus/antimalware protection software and other customary procedures to avoid introducing or permitting the introduction of any virus into the other party's information systems."

## CHC Had A Contractual and Legal Duty to Follow HIPAA Rules Regarding the Safety of PHI

66.    The HIPAA Security Rule is a legal minimum standard for protection of PHI, and electronic PHI that is maintained, used, created, or received by entities in the healthcare industry, and their contractors, such as CHC.

67.    Under 45 C.F.R. § 164.306 a covered entity or their business associates must comply with the applicable safety standards established in 45 C.F.R. § 164.308, 45 C.F.R. § 164.310, and 45 C.F.R. § 164.312.

68.    The HIPAA Security Rule provides that "[i]n deciding which security measures to use, a covered entity or business associate must take into account the following factors: (i) The size, complexity, and capabilities of the covered entity or business associate. (ii) The covered entity's or the business associate's technical

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

infrastructure, hardware, and software security capabilities. (iii) The costs of security measures. (iv) The probability and criticality of potential risks to electronic protected health information."

69.    As reviewed above, the HIPAA Security Rule is expressly stated in several of the agreements, including but not limited to the Business Associate Agreement and/or Addenda.

70.    CHC, at the time of the data breach, was the largest payment processing company in the United States for the healthcare industry, and was, therefore, in charge of handling significant PHI and Confidential Information, not only from CareFirst but other major insurers, healthcare providers which used its systems and others.

71.    Additionally, upon information and belief, CHC was owned and operated under the umbrella of United Health Group which has been hailed as the largest healthcare conglomerate in the United States. As a result, CHC should have taken significant security methods to ensure that PHI data would be kept safe from cyberattacks.

72.    45 C.F.R. § 164.308 provides the minimum Administrative Safeguards that covered entities should follow and create, including in cases where there is a breach. It requires that covered companies and their business associates establish procedures to maintain copies of electronic PHI, procedures for recovery of lost data, and procedures to enable the continuation of critical business processes for the protection of electronic PHI while on emergencies.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

73.    45 C.F.R. § 164.310 requires that covered entities, such as CHC, provide Physical Safeguards, including for example the Workstation Security Standard which provides that companies should implement physical safeguards for all workstation with access to electronic PHI.[1]

74.    45 C.F.R. § 164.312 provides the Technical Safeguards for covered entities under HIPAA. Those safeguards include the implementation of "procedures to verify that a person or entity seeking access to electronic protected health information is the one claimed." 45 C.F.R. § 164.312(d).

75.    CHC's systems were outdated, inadequate or otherwise lacked the appropriate safeguards to abide by its contracts with CareFirst, HIPAA privacy requirements, and basic standards of enterprise information security.

76.    As a result, CareFirst was caused to suffer damages, incur attorney's fees, litigation costs, and were otherwise harmed and damaged.

### COUNT I: BREACH OF CONTRACT

77.    The prior paragraphs of the Complaint are incorporated herein.

78.    CareFirst contracted with CHC for the performance of a variety of services which required use of CHC's platforms.

79.    These agreements included safeguards for the maintenance of Confidential Information, and PHI.

80.    At all times, CHC was bound to comply with the HIPAA Security Rule.

LAW OFFICES

McCARTHY WILSON LLP

A LIMITED LIABILITY PARTNERSHIP

WWW.MCWILSON.COM

---

[1] Based on NIST 800-66, workstations which are moveable should have stringent access controls such as multifactor authentication.

21

81.    CHC breached its contracts with CareFirst by failing to provide reasonable care in its maintenance of Confidential and Protected Information, failing to provide adequate security measures, and failing to ensure that its systems were properly safeguarded against intrusions through the use of MFA or other security measures.

82.    CHC further breached its contracts with CareFirst by failing to ensure that the PHI and electronic PHI was maintained under proper security protocols and protections under the HIPAA Security Rule, including, but not limited to, the use of MFA.

83.    CHC breached its contract with CareFirst by being unable to recover its systems and perform under the contracts. As a result, CareFirst was forced to send a letter notifying CHC of its material breaches under the agreements.

84.    As a result of the breach by CHC, which began on February 21, 2024 when notice was provided to CareFirst, CareFirst had to divert significant manpower and resources to make up for the cybersecurity failures of CHC. This cost CareFirst an estimated $476,000.00 in costs as a result of having to divert staff to deal with the data breach and service interruption from CHC.

85.    CareFirst further had to loan funds destined to investments to providers interest-free to make up for the issues arising out of the data breach.

86.    CareFirst was further deprived of the data it maintained with CHC, especially for its CFA (CareFirst Administrators which administers many employer

group accounts) and Government Programs (Medicare Advantage and Maryland Medicaid) lines of business.

87.    As a direct result of the breach(es) of CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, loss of reputation and revenue. CareFirst was also exposed to third party claims by its consumers who had their private information stolen and incurred other damages.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

## COUNT II: NEGLIGENCE

88.    The prior paragraphs of the Complaint are incorporated herein.

89.    CHC had a duty to CareFirst to handle all of the Confidential Information that CareFirst provided in a secure manner.

90.    MFA is an industry standard in the healthcare industry for accessing accounts.

91.    CHC further had a statutory duty under HIPAA to ensure that PHI and electronic PHI would be safeguarded.

92.    CHC had a duty to quickly remediate the damages created by a data breach and ensure that its systems would be safe and operational in a reasonable amount of time.

93.    These Plaintiffs and their customers are the type of individuals which HIPAA seeks to protect through its Security Rule.

94.    CHC breached those duties by failing to implement proper safeguards, including but not limited to maintaining redundant independent back-up systems separate from their main system, failing to have proper security procedures through the lack of implementation of MFA as a minimum-security standard across the entirety of its systems, failing to restore and upgrade its systems promptly after the data breach, among other failures to adhere to necessary safety and security protocols and industry standards.

95.    The negligence of CHC was the actual and proximate cause of damages to CareFirst. CHC's failures to reasonably, legally, and properly secure its systems resulted in the security breach, which rendered its systems useless. This cost CareFirst access to valuable data, and management systems it maintained with CHC. Additionally, CareFirst had to expend significant funds to remediate the damages caused by CHC's negligence.

96.    As a direct result of these failures by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

## COUNT III: NEGLIGENCE *PER SE*

97.     The prior paragraphs of the Complaint are incorporated herein.

98.     CHC had a duty to CareFirst to handle all of the Confidential Information that CareFirst provided in a secure manner.

99.     CHC further had a statutory duty under HIPAA to ensure that PHI and electronic PHI would be safeguarded.

100.    These Plaintiffs and their customers are the type of individuals which HIPAA seeks to protect through its Security Rule.

101.    CHC breached those duties by failing to implement proper safeguards, including but not limited to maintaining redundant independent back-up systems separate from their main system, failing to have proper security procedures through the lack of implementation of MFA as a minimum-security standard across the entirety of its systems, failing to restore and upgrade its systems promptly after the data breach, among other failures to adhere to necessary safety and security protocols and industry standards.

102.    The negligence of CHC in direct violation of the protections of HIPAA and similar state privacy protections, rules and regulations was the actual and proximate cause of damages to CareFirst. CHC's failures to reasonably, legally, and properly secure its systems resulted in the security breach which rendered its systems useless. This cost CareFirst access to valuable data, and management systems it maintained with CHC. Additionally, CareFirst had to expend significant funds to remediate the damages caused by CHC's negligence.

103.    As a direct result of these failures by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

### COUNT IV: GROSS NEGLIGENCE

104.    The prior paragraphs of the Complaint are incorporated herein.

105.    CHC knew it had a duty to maintain security measures to secure PHI and CareFirst's Confidential Data.

106.    CHC was aware that CHC maintained outdated and vulnerable systems. For example, as UHG's CEO testified to Congress, aspects of Change's legacy systems used to process claims and payments were up to 40 years old.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

26

107.    Upon information and belief, CHC did not employ MFA across its systems and CHC knew or should have known (and therefore recklessly disregarded appropriate standards and information) that MFA was an industry standard to help safekeep access to its electronic systems by verifying the identity of the person entering the system.

108.    CHC knew that it held the PHI and electronic PHI of millions of Americans, and Marylanders as a result of its contracts with CareFirst.

109.    CareFirst updated its agreements with CHC to ensure that CHC kept CareFirst customer's and its own data processes and calculations safe.

110.    CHC knowingly, carelessly, and/or otherwise recklessly held outdated systems that it did not upgrade, did not have proper security for the amount of sensitive data it handled for CareFirst and other healthcare customers, or otherwise failed to confirm with requisite industry standards, regulations or requirements.

111.    CHC's actions, inactions and tortious activities were careless, reckless, and/or constituted willful misconduct.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, and punitive damages, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

## COUNT V: NEGLIGENT HIRING, SUPERVISION, TRAINING AND
## RETENTION

112.    The prior paragraphs of the Complaint are incorporated herein.

113.    CHC had a duty to hire, supervise, train and/or retain employees, contractors, and vendors who would handle all of the Confidential Information that CareFirst provided in a secure manner.

114.    MFA is an industry standard in the healthcare industry for accessing accounts.

115.    CHC further had a statutory duty under HIPAA to ensure that PHI and electronic PHI would be safeguarded.

116.    CHC breached those duties by failing to hire, supervise, train and/or retain employees, contractors, and vendors who would implement proper safeguards including, but not limited to redundant independent back-up systems separate from their main system, implement MFA as a minimum-security standard across the entirety of its systems, and to restore and upgrade its systems after the data breach.

117.    The negligence of CHC in its failure to hire, supervise, train and/or retain employees, contractors, and vendors was the actual and proximate cause of damages to CareFirst. This cost CareFirst access to valuable data, and management systems it maintained with CHC. Additionally, CareFirst had to expend significant funds to remediate the damages caused by CHC's negligence.

118.  As a direct result of these failures by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

### COUNT VI: NEGLIGENT ENTRUSTMENT

119.  The prior paragraphs of the Complaint are incorporated herein.

120.  CHC had a duty to entrust its employees, contractors, and vendors with access to its technology, servers, and the Confidential Information that CareFirst provided in a secure manner.

121.  MFA is an industry standard in the healthcare industry for accessing accounts.

122.  CHC further had a statutory duty under HIPAA to ensure that PHI and electronic PHI would be safeguarded.

123.  CHC breached those duties by negligently entrusting employees, contractors, and vendors with Confidential Information and PHI, allowing secure credentials to be shared, leaked, or provided to hackers who infiltrated the systems and caused irreparable harm to Plaintiffs.

124. CHC further breached those duties by negligently entrusting employees, contractors, and vendors with Confidential Information and PHI, without requiring MFA or other enhanced security measures to ensure access to the Confidential Information and PHI provided by CareFirst was only being undertaken pursuant to the security and privacy regulations in place for this data.

125. This negligent entrustment by CHC was the actual and proximate cause of damages to CareFirst. This cost CareFirst access to valuable data, and management systems it maintained with CHC. Additionally, CareFirst had to expend significant funds to remediate the damages caused by CHC's negligence.

126. As a direct result of these failures by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

## COUNT VII: INTENTIONAL MISREPRESENTATION

127. The prior paragraphs of the Complaint are incorporated herein.

128. CHC agreed to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst. Based upon the representations made by CHC, CareFirst provided this highly protected and delicate

private information regarding its customers, their claims, insurance information, financial information, protected medical information and other confidential information, documents and data.

129.    CHC represented to CareFirst that security protocols to prevent a breach of this type from occurring were in place.

130.    In direct contradiction to these representations, CHC failed to have even the most basic security measures in place, making themselves an easy target for a data breach such as the one that occurred in February, 2024.

131.    The representations made by CHC were knowingly false and were made to induce CareFirst to provide confidential data and enter into agreements with them for services.

132.    These false assurances constitute false representations of material facts to CareFirst and were made with the intention of having CareFirst act and rely upon them.

133.    As a direct result of the intentional misrepresentations by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, and punitive damages, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

## **COUNT VIII: NEGLIGENT MISREPRESENTATION**

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

134.    The prior paragraphs of the Complaint are incorporated herein.

135.    CHC agreed to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst.    Based upon the representations made by CHC, CareFirst provided this highly protected and delicate private information regarding its customers, their claims, insurance information, financial information, protected medical information and other confidential information, documents and data.

136.    CHC represented to CareFirst that security protocols to prevent a breach of this type from occurring were in place.

137.    In direct contradiction to these representations, CHC failed to have even the most basic security measures in place, making themselves an easy target for a data breach such as the one that occurred in February, 2024.

138.    CHC was negligent in the assertion of these false statements related to security measures being implemented.    Those assertions were made to induce CareFirst to provide confidential data and enter into agreements with them for services.

139.    As a direct result of the negligent misrepresentations by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

### COUNT IX: BREACH OF FIDUCIARY DUTY

140.    The prior paragraphs of the Complaint are incorporated herein.

141.    Throughout the last decade, CHC had several contracts with CareFirst for critical clearinghouse, risk adjustment, claims processing, and other related services spanning multiple agreements and entities. As a result of these agreements, CareFirst shared with CHC protected and confidential information, including electronic PHI of its insureds.

142.    CHC agreed to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst. As such, and by virtue of the contracts and agreements between the parties, CHC owed a fiduciary duty to CareFirst.

143.    CHC breached that fiduciary duty intentionally, with malice, and/or with reckless disregard for the rights and interests of CareFirst by failing to enact even the most basic security measures to prevent the data breach from occurring. This breach of duty was willful and contrary to the best interests of CareFirst and its customers.

144.    As a direct result of the breach of fiduciary duty by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

## COUNT X: BREACH OF EXPRESS WARRANTY

145.    The prior paragraphs of the Complaint are incorporated herein.

146.    Throughout the last decade, CHC had several contracts with CareFirst for critical clearinghouse, risk adjustment, claims processing, and other related services spanning multiple agreements and entities. As a result of these agreements, CareFirst shared with CHC protected and confidential information, including electronic PHI of its insureds.

147.    In connection with the provisions of those services, CHC expressly agreed and warranted to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst.

148.    CHC was aware that CareFirst was reasonably relying on them to provide their services with industry standard security measures in place to prevent data breaches and catastrophic losses to it and its customers. In reliance upon the warranties made by CHC, CareFirst released confidential, private and protected information of its customers to them.

149.    CHC breached that express warranty by failing to enact even the most basic security measures to prevent the data breach from occurring. This breach was willful and contrary to the best interests of CareFirst and its customers.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

34

150.    As a direct result of the breach of this express warranty by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

### COUNT XI: BREACH OF IMPLIED WARRANTY

151.    The prior paragraphs of the Complaint are incorporated herein.

152.    Throughout the last decade, CHC had several contracts with CareFirst for critical clearinghouse, risk adjustment, claims processing, and other related services spanning multiple agreements and entities. As a result of these agreements, CareFirst shared with CHC protected and confidential information, including electronic PHI of its insureds.

153.    In connection with the provisions of those services, CHC impliedly agreed and warranted to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst.

154.    CHC was aware that CareFirst was reasonably relying on them to provide their services with industry standard security measures in place to prevent data breaches and catastrophic losses to it and its customers. In reliance upon the warranties made by

CHC, CareFirst released confidential, private and protected information of its customers to them.

155.   CHC breached that implied warranty by failing to enact even the most basic security measures to prevent the data breach from occurring.  This breach was willful and contrary to the best interests of CareFirst and its customers.

156.   As a direct result of the breach of this implied warranty by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation and revenue, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

## COUNT XII: CONSTRUCTIVE FRAUD

157.   The prior paragraphs of the Complaint are incorporated herein.

158.   Throughout the last decade, CHC had several contracts with CareFirst for critical clearinghouse, risk adjustment, claims processing, and other related services spanning multiple agreements and entities. As a result of these agreements, CareFirst shared with CHC protected and confidential information, including electronic PHI of its insureds.

159.   CHC agreed to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst.  As such, and by virtue

of the contracts and agreements between the parties CHC owed a fiduciary duty to CareFirst.

160.    CareFirst relied upon CHC's knowingly false representations that they would abide by privacy regulations and maintain the Confidential Information and PHI that they were provided in a secure environment.    CareFirst relied on those representations prior to contracting with CHC for their services.

161.    CHC agreed to utilize necessary safeguards and mechanisms to protect the Confidential Information and PHI being provided by CareFirst.  As such, and by virtue of the contracts and agreements between the parties, CHC owed a fiduciary duty to CareFirst.

162.    CHC breached that fiduciary duty intentionally, with malice, and/or with reckless disregard for the rights and interests of CareFirst by failing to enact even the most basic security measures to prevent the data breach from occurring.  This breach of duty was willful and contrary to the best interests of CareFirst and its customers.

163.    These actions amounted to a constructive fraud committed on CareFirst by CHC.

164.    As a direct result of the constructive fraud by CHC, CareFirst was caused to incur costs, penalties, interest, attorney's fees, and interest.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in favor of the Plaintiffs against the Defendants in an amount in excess of $75,000.00 in compensatory damages, consequential damages, incidental damages, loss of reputation

and revenue, and punitive damages, plus pre-judgment interest, post-judgment interest, costs and attorney fees, and for any further relief this Court deems just and appropriate.

Respectfully submitted:

McCARTHY WILSON LLP

By:     *//s//  Richard W. Evans, Esquire*
        Richard W. Evans, Esquire
        AIS #: 9506210124
        Kathleen Fawcett Harris, Esquire
        AIS #: 1012140248
        2200 Research Boulevard, Suite 500
        Rockville, MD 20850
        (301) 762-7770 – Office
        (301) 926-7444 - Facsimile
        evansr@mcwilson.com
        detroiam@mcwilson.com
        *Attorneys for Plaintiffs*

## **PRAYER FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

*//s//  Richard W. Evans, Esquire*
Richard W. Evans, Esquire

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

**IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND**

CAREFIRST, INC., et al.,     :

   Plaintiff       :

v.            :   Case No.: C-03-CV-25-000701

CHANGE HEALTHCARE     :
TECHNOLOGIES, LLC, et al.,

            :

   Defendant

## **CERTIFICATE REGARDING DISCOVERY**

I HEREBY CERTIFY that on this 23rd day of June, 2025, I served on all counsel or

pro se parties hereto:

1. Plaintiff CareFirst, Inc's. Interrogatories to Defendants

   a.  Change Healthcare Technologies, LLC;

   b.  Change Healthcare, Inc.;

   c.  Change Healthcare Solutions, LLC;

   d.  Change Healthcare Resources, LLC;

   e.  Change Healthcare Technology Enabled Services, LLC;

   f.  Change Healthcare Practice Management Solutions, Inc.;

   g.  Altegra Health Operating Company, LLC; and,

   h.  Envoy LLC.

2. Plaintiff CareFirst of Maryland, Inc's. Interrogatories to Defendants;

   a.  Change Healthcare Technologies, LLC;

   b.  Change Healthcare, Inc.;

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

1

    c.  Change Healthcare Solutions, LLC;

    d.  Change Healthcare Resources, LLC;

    e.  Change Healthcare Technology Enabled Services, LLC;

    f.  Change Healthcare Practice Management Solutions, Inc.;

    g.  Altegra Health Operating Company, LLC; and,

    h.  Envoy LLC.

3. Plaintiff CareFirst of Maryland, Inc's Request for Production of Documents to Defendants:

    a.  Change Healthcare Technologies, LLC;

    b.  Change Healthcare, Inc.;

    c.  Change Healthcare Solutions, LLC;

    d.  Change Healthcare Resources, LLC;

    e.  Change Healthcare Technology Enabled Services, LLC;

    f.  Change Healthcare Practice Management Solutions, Inc.;

    g.  Altegra Health Operating Company, LLC; and,

    h.  Envoy LLC.

and that I will retain the originals of these documents in my possession, without alteration, until the case is concluded in this Court, the time for noting an appeal has expired, and any appeal noted has been decided.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

Respectfully submitted:

McCARTHY WILSON LLP

By:   *//s//  Richard W. Evans, Esquire*
Richard W. Evans, Esquire
AIS #: 9506210124

*//s//  Kathleen F. Harris, Esquire*
Kathleen Fawcett Harris, Esquire
AIS #: 1012140248
2200 Research Boulevard, Suite 500
Rockville, MD 20850
(301) 762-7770 – Office
(301) 926-7444 - Facsimile
evansr@mcwilson.com
harrisk@mcwilson.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2025, a copy of the foregoing Certificate Regarding Discovery Defendants was filed with the Court and served upon the parties with the Complaint.

By:   *//s//  Richard W. Evans, Esquire*
Richard W. Evans, Esquire

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

3